UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WARREN BURCH,  individually and          *
on behalf of all others similarly situated,   *
    Plaintiff,                              *
                           *
v.                                       *     Case No.: _1:17-cv-00018_____
                           *
WHIRLPOOL CORPORATION,                    *
                           *
    Defendant.                            *

## CLASS ACTION COMPLAINT

1.    Plaintiff Warren Burch ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Whirlpool Corporation ("Defendant" or "Whirlpool").  The following allegations are based upon Plaintiff's personal knowledge and on information and belief as to the acts of others.

2.    Plaintiff represents a proposed class of thousands of consumers who own and use residential dishwashers designed and manufactured by Whirlpool.  These dishwashers are defective in that their upper rack adjusters, which connects the top rack of a dishwasher to the rails that hold the upper rack in place, are made of brittle plastic that routinely breaks during normal use of the dishwashers.  When the plastic breaks, the rack adjuster fails to function, rendering the dishwasher unusable because the top rack is no longer connected to the rails.  The top rack then collapses or is completely immobile.  Therefore, the failed rack adjuster must be replaced in order for the top rack to be held in its proper place and the dishwasher to function as intended.

3.    Thousands of consumers have experienced rack adjuster failures within Whirlpool dishwashers, and many have experienced multiple failures.  Despite this fact and the receipt of

thousands of consumer complaints, Whirlpool has not recalled or informed the public that its dishwashers are defective.  In fact, Whirlpool does not even cover the defect under warranty, forcing consumers to purchase and install replacement rack adjusters themselves.

4.      Whirlpool's actions violate established contract and tort laws.  Plaintiff brings this action on behalf of himself and all similarly situated consumers, seeking damages and equitable relief, including an order enjoining Whirlpool from selling these dishwashers without disclosing their defect to consumers.

## PARTIES

5.      Plaintiff is an adult citizen and resident of Botetourt County, Virginia.

6.      Whirlpool is a Delaware corporation that maintains its principal place of business in Benton Harbor, Michigan.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because (a) at least one member of the proposed class is a citizen of a state different than Whirlpool, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) the proposed class consists of more than 100 class members.

8.      This Court has jurisdiction over Defendant because Whirlpool is principally located and is therefore a resident of the forum state.

9.      Venue is proper in this district under 28 U.S.C. §1391 because Whirlpool resides within this judicial district.

## FACTUAL ALLEGATIONS

10.      Whirlpool is the largest home appliance maker in the world.  It sells appliances under a variety of brand names including KitchenAid and Kenmore.

11.     Like many Whirlpool appliances, Whirlpool dishwashers share similar components and parts across its different brands.  One such component—a rack adjuster—is manufactured by Whirlpool and found in KitchenAid, Kenmore, and Whirlpool-brand dishwashers.

12.     The purpose of the rack adjuster is to connect the top nylon rack that holds dishes to the upper rail and wheel system in the dishwasher.  The rack adjuster thus allows the rack to slide in and out of the dishwasher.  A photo of a rack adjuster where the plastic has cracked (circled) appears below.



### A.    **The Defect At Issue.**

13.     Whirlpool-manufactured dishwashers are defective because their rack adjusters, which are made out of brittle plastic, routinely fail, causing the top nylon racks in the dishwasher to collapse or become immovable.  Thus, the dishwasher will not function properly until the rack adjuster is replaced.  This failure is caused by a design defect, manufacturing defect, or defect in the materials used in manufacturing the machines.  Specifically, when the rack adjuster is exposed to repeated high temperature cycles, the plastic used in the manufacture of the rack

adjuster becomes brittle and breaks causing the rack adjuster to fail.  As such, the dishwasher is unfit for the purpose for which it was manufactured because the rack adjuster is susceptible to repeated washes at high temperatures.   In fact, many consumers have reported rack adjuster failures within the first few months of purchase of their dishwasher.

14.    Below are consumer complaints (unaltered) regarding the defective rack adjusters within Whirlpool-manufactured dishwashers:

> Jim of Parker, CO on Oct. 21, 2015
> *Satisfaction Rating*
> Top rack bracket on our KitchenAid dishwasher fragmented nine months after purchase, spewing plastic into the inner workings of the machine and seizing up / damaging the unit. Think that's covered under warranty? Think again! KitchenAid/Whirpools service technicians don't think so! Don't buy KitchenAid!
>
> * * *
>
> Carol of Baltimore, MD on Nov. 12, 2015
> *Satisfaction Rating*
> I have a 4 year old Kitchenaid Dishwasher. We spent over $1,000 for it thinking we were investing in a very nice, long lasting machine. After a year, the right clip on the top rack broke and needed to be repaired by a technician. 6 months later the other side broke and we needed another service call. In the last few weeks, all 8 wheels have fallen off the bottom rack. We run the dishwasher about once every three days. I spoke to Kitchenaid customer service this morning via their online chat. The service representative admitted that there were so many complaints about my model that it should have been recalled. She said there was nothing she could do for me. I called and spoke to a customer service representative and their supervisor and they both refused to provide the replacement parts. My model is KUDE 40FXSP3. I will never buy another Kitchenaid product. Even when they know there's an issue, they will not take responsibility for it.

(http://www-consumeraffairs.com/homeowners/kit_dishwasher.html.)

> Byreview2uon February 7, 2015
> Since Whirlpool stock is way up in price, might be a good time to sell...        or        short        the        stock.....
> After owning Maytag for 4 years and having a manufactures defect

4

they made me an offer I could not refuse and I bought a new top of the line Kitchenaid dishwasher. on 6/2013. I am real happy with the performance, its quite, cleans great so far. The bad news is that a thousand dollar dishwasher should not have such a poorly designed upper basket. The wheels just broke and several expensive pieces of glassware fell out and broke.. Ask me if I am angry LOL. After reading the many complaints on the design and quality of the parts used and that most have experienced the same problem I urge everyone to call Whirlpool corp. at Corporate Office                      Headquarters                      HQ: Address:              2000              N.              M-63 Benton        Harbor,        Michigan        49022-2692        USA Corporate          Phone          Number:          1-269-923-5000 and  ask  for  the  office  of  the  President  and  complain.


The cost of repair with service is over a 150.00. but if your handy you can fix it better than new for under $2.00. Here is the You Tube      site      https://www.youtube.com/watch?v=EZ_f48FJBP8 Hope                                  this                                  helps Review2u

* * *

Byg. manon November 18, 2014
Verified Purchase
I hope this doesn't reflect badly on the seller, as the product shipped quickly, but these pieces are junk... They are cheap plastic and break easily under regular use. We don't overload our dishwasher on the top rack, and the tabs that hold the wheels on still break. We have had it for 2 years now, and this is the fourth set of these we had to replace. Whirlpool really screwed this up.... They need to make these things out of more durable plastic or come up with a design that doesn't stink....

(https://www.amazon.com/Whirlpool-W10350376-Rack-Adjuster/product-reviews/B00A8O0FG2/ref=cm_cr_getr_d_paging_btm_20?ie=UTF8&reviewerType=all_reviews&showViewpoints=1&sortBy=recent&pageNumber=20)

**B.**    **Whirlpool Had Actual Knowledge Of The Defect Within The Subject Dishwashers Based On Consumer Complaints, Warranty Claims, And The Manufacture And Sale Of Re-Designed Rack Adjusters.**

15.    Before placing its dishwashers in the stream of commerce, Whirlpool had actual knowledge that its dishwashers contained defective rack adjusters that will crack and fail during normal use of the machines, causing the dishwashers to not function properly.

16.    Whirlpool also had actual knowledge of the defect because it received consumer complaints, both directly and indirectly.

17.    Based upon the thousands of consumer complaints available via the Internet, Whirlpool rack adjusters fail anywhere between six (6) to eighteen (18) months after purchase.

18.    In response to direct consumer complaints and warranty claims, Whirlpool claims that the rack adjuster is considered "cosmetic" and therefore not covered under warranty:

> ByTrey Smithon November 16, 2014
> What a disaster of a part - DESIGN FLAW! And KA warranty support says this is a *cosmetic* part, and is thus not covered by warranty! Cosmetic!? Like lipstick? This part is what allows the upper tray to slide out! It sure as heck doesn't make the dishwasher any prettier! Thank goodness Amazon has these on Prime. The five stars are for Amazon, not for this awful blight of diseased plastic spoor.

(https://www.amazon.com/Whirlpool-W10350376-Rack-Adjuster/product-reviews/B00A8O0FG2/ref=cm_cr_getr_d_paging_btm_20?ie=UTF8&reviewerType=all_reviews&showViewpoints=1&sortBy=recent&pageNumber=20)

19.    Notwithstanding the countless consumer complaints and warranty claims Whirlpool received regarding rack adjuster failures, Whirlpool was aware of its rack adjusters' repeated failures, as evidenced by the amount of replacement rack adjusters sold to consumers. Whirlpool offers replacement rack adjusters (W10350476) for sale at numerous retail stores such as Sears and over the Internet at various websites like Amazon.

6

20.     Whirlpool explains that replacement rack adjusters function just like original rack adjusters in Whirlpool-manufactured machines.   Thus, the replacement rack adjusters, like the originals, suffer from the same defect.

21.     In fact, many consumers purchase multiple sets of rack adjusters because it is only a matter of time before the replacement rack adjusters fail as well:

> Byjames e. visneyon April 2, 2015
> Verified Purchase
> I purchased 2 of these (to replace left and right side) and they lasted just over 1 year before the wheels broke off both of them, just like the original parts. The plastic becomes brittle over time. Breakage occurs in the same place each time... the little plastic "arms" that hold the wheels in place are too thin. Now the price to replace is double what I paid.
>
> * * *
>
> ByRoyceon January 20, 2015
> Verified Purchase
> I would give this zero stars if it were an option. I agree with the other reviews...this part is designed to fail. This is the fourth time I have ordered the same part in the last 30 months for a relatively new Kitchenaid dishwasher. I am very disappointed with design and would like to know the failure rate for this particular part. I believe the manufacturer should recall the part and develop a reliable replacement.
>
> * * *
>
> ByBWon November 13, 2014
> In addition to Whirlpool units, this part is also used on Frigidaire units and the Kenmore 12773 dishwasher. As mentioned by other users, it will fail at about the one year mark. Replacement rack adjusters will also fail around the one year mark. The part has small plastic tabs that hold the wheels to the rack adjuster. These tabs will deteriorate in the hot environment of the dishwasher, causing them to fail.

(https://www.amazon.com/Whirlpool-W10350376-Rack-Adjuster/product-reviews/B00A8O0FG2/ref=cm_cr_getr_d_paging_btm_20?ie=UTF8&reviewerType=all_reviews&showViewpoints=1&sortBy=recent&pageNumber=20)

**Alicia Russi**
JANUARY 12, 2015 AT 8:01 AM
I am so frustrated, purchasing parts again. I think it is the 4th time!
This part should not be made of plastic. It can't seem to handle the
heat, the wear, and the weight of the dishes in the top rack. They
really need to address this problem.

(http://amodernpolymath.com/kitchenaid-upper-rack-roller-repair/)

22.     Given Whirlpool's enormous share of the home appliance market, defective rack

adjusters are contained in millions of dishwashers throughout the country.

23.     As further evidence of Whirlpool's knowledge, in response to the flood of

consumer complaints regarding rack adjuster failures, Whirlpool redesigned the rack adjuster in

or around early 2014.   The redesigned rack adjuster (W10712394) is compatible with all

W10350476-specific models but replaces the plastic prongs found in the previous model with

stainless steel prongs, which purportedly are more durable and thus less likely to fail.

Consumers noted the improved durability in reviews left on websites where the parts are

available.

**Question**: Is this a replacement for the Whirlpool Part Number
W10350375? I am getting really tired of replacing these every 6 months!
**Answer**: Yes, I used this to replace W10350375, it is solid steel and the
plastic parts are more substantial that the original W10350375 plastic that
keep giving out on me too. I can't imagine how they got away with making
the original. The install instructions are lacking, but we did work it out just
fine.
By Classical HS on January 21, 2015

**Question**: I am tired of buying the rack adjuster for this dishwasher. They
break every 6 months. Did this upgrade/replacement finally solve the
issue?
**Answer**: Ys It Is Better Built than original one
By Gary Miller on April 21, 2015

It has only been a couple weeks and it has been working great for us.
Fingers crossed!
By Heidi on April 20, 2015

8

I have had this one for about 3 months now. It already is holding up much better imho. Only time will tell but the part they fixed was the part that always snapped for me (prongs holding the wheels together.)
By Christopher Clubb on April 20, 2015

Sorry it's taken so long, I've been away from the computer. I installed the new parts and was very pleased with the quality of the now metal parts with plastic redesign. It all went together without a hitch. Well worth the money. Dissipointed I had to make the repair, but glad they now offer a redesigned unit. Hope this helps.
Mark

(https://www.amazon.com/Kenmore-0W10712394-Whirlpool-W10712394-Adjuster/dp/B00SPYDSFC)

24.    While it appears that the stainless steel option has decreased the number of rack

adjuster failures among Whirlpool dishwasher owners, Whirlpool makes the consumer purchase

the new part as opposed to offering the replacement part free of charge or via warranty:

> ByCatfishon April 25, 2015
> Verified Purchase
> Don't waste your time and money this piece of junk. It's the same poorly-designed, low-quality material part that was in your dishwasher originally; and you'll be replacing it again within a year or so if you use this part (ask me how I know). Whirlpool / Kitchenaid should be ashamed putting such a poorly made design in                  their                  expensive                  dishwashers.
>
> The better solution is to use the Whirlpool W10712394 Adjuster KIT. It is a re-design of the original adjuster setup and uses a metal piece in place of this piece. It is more rigid and does not use plastic "axles" for the rollers. It took me about 15 minutes to install the new part and completely replace the rack adjuster on both sides of the upper rack.

(https://www.amazon.com/Whirlpool-W10350376-Rack-Adjuster/product-reviews/B00A8O0FG2/ref=cm_cr_getr_d_paging_btm_20?ie=UTF8&reviewerType=all_reviews&showViewpoints=1&sortBy=recent&pageNumber=20)

> **Susan**
> SEPTEMBER 30, 2014 AT 10:34 AM
> I too have a 2 year old machine with the same problem – wheel assembly on the top rack has broken for the second time in 24 months. Called the world headquarters number – asked for Kitchen

9

aid parts supervisor – was just informed that they have a new wheel assembly that should fix the problem. (I was not this successful in my first attempt this morning – so I tried again) Do not purchase the extended warranty as I was informed this is a "cosmetic" problem, not a functional problem and therefore these parts are not covered. Makes no sense. Fingers crossed that the wheel assembly is truly a permanent fix.

\* \* \*

**Sarah Wrth**
JUNE 12, 2015 AT 7:35 PM
We purchased a KitchenAid dishwasher (model # KUDS30IXSS4) 3 1/2 years ago. The plastic clips that hold the upper rack broke 2 different times…this was shortly after the warranty expired…so I paid both times for the repair. KitchenAid did finally replace this faulty plastic clip with a metal clip on all of their dishwashers…but they called it an "upgrade" and not a "recall"…so they did not reimburse me for the almost $300.00 I had spent on previously repairing the faulty clips. Shortly after the plastic clips broke the second time the dishwasher made a "funny" noise. I shut the washer off and restarted it… upon restarting …it seemed fine. However, shortly after this it stopped cleaning the dishes. This was right in the interim when KitchenAid replaced the faulty plastic clip and went to the metal clip. What we did not realize is that pieces of the broken plastic went down into the "chopper/grinder" and broke that section of the dishwasher. When the repair man finally realized what had happened and why the washer was not cleaning we called KitchenAid. I asked KitchenAid to step up and take responsibility for the faulty design and they declined…saying that there was not enough evidence/proof that it was faulty design. Needless to say…I will never purchase another KitchenAid/Whirlpool product only because the will not step up and take responsibility for their product. Final note…this new repair will cost another $300.00.

(http://amodernpolymath.com/kitchenaid-upper-rack-roller-repair/)

25.    Because both the W10350476 (plastic) and W1072394 (stainless steel) parts are manufactured by Whirlpool, the company is profiting off of its own defect.

C.     **Whirlpool Failed To Disclose And Otherwise Conceal The Nature Of The Defect From Consumers**.

26.     Whirlpool continuously failed to disclose this defect to the public despite its own testing, customer complaints, warranty claims, and the high volume of sales of replacement rack adjusters.

27.     Whirlpool knew or should have known that reasonable consumers were unaware of this latent defect—which exists at the point of sale of the machines—and that consumers reasonably expected the dishwashers to clean dishes during their effective life without experiencing repeated part failures.

28.     Instead of disclosing the material defect, Whirlpool informed consumers that there was no defect and rack adjuster replacements were not covered under warranty.  In doing so, Whirlpool continued to line its pockets with the added revenue generated from the sale of replacement rack adjusters.

29.     The defect, which is inherent at the point of sale of the machine, is not reasonably discoverable by dishwasher owners until they experience the results of the defect.  As a result of Whirlpool's inaction, consumers purchase defective dishwashers at premium prices and are forced to expend money replacing rack adjusters throughout the life of the product.  Consumers would not have purchased Whirlpool dishwashers, or they would have paid far less for them, had they known the rack adjusters within the dishwashers were destined to fail.

## PLAINTIFF'S INDIVIDUAL FACTS

30.     Plaintiff purchased his KitchenAid dishwasher (Model KUDS30CXWH7) in 2013 at Sears in Roanoke, Virginia.  Within the applicable warranty period, Plaintiff experienced numerous upper rack adjuster failures in his dishwasher.  Plaintiff contacted Whirlpool regarding the rack adjuster failure and was informed that the product was not covered under warranty.  Per

Whirlpool's instructions, Plaintiff purchased a replacement rack adjuster manufactured by Whirlpool on Amazon.com.    However, the replacement adjuster also failed.    Plaintiff subsequently purchased several more replacement rack adjusters, as instructed by Whirlpool, but continued to experience rack adjuster failures throughout the applicable warranty period.

31.    It was not until Plaintiff purchased the redesigned steel rack adjuster in 2015, per Whirlpool's instructions, that the rack adjuster failure was cured.    Plaintiff was forced to purchase $100 worth of rack adjusters in order to remedy the defect.

32.    Plaintiff would not have purchased a KitchenAid dishwasher or would not have purchased his dishwasher for the same sales price had Whirlpool disclosed the defect.    Plaintiff did not receive the benefit of his bargain.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this suit as a class action on behalf of himself and on behalf of all other similarly situated pursuant to Federal Rule of Civil Procedure 23.    The class that Plaintiff seeks to represent is defined as follows:

> The Nationwide Class
>
> During the fullest period allowed by law, all persons and entities who purchased Whirlpool dishwashers primarily for personal, family, or household purposes, and not for resale, in the United States.

34.    Plaintiff also brings this case on behalf of the state subclass defined below, and proposes this subclass in the interest of judicial economy and efficiency.    At the class certification stage, and in response to discovery and pursuant to any instruction by the Court, Plaintiff may modify this subclass in the future:

The Virginia Class

During the fullest period allowed by law, all persons and entities who purchased Whirlpool dishwashers primarily for personal, family, or household purposes, and not for resale, in the State of Virginia.

35.    Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or amended complaint.

36.    Specifically excluded from the class are Whirlpool, its officers, directors, agents, its corporate parent, or entities controlled by Whirlpool, and its successors or assigns, the judge assigned to this action, and any member of the judge's immediate family.

37.    Numerosity:  The members of the class are so numerous that joinder of all members would be impracticable.  The proposed class includes thousands of members. Although the exact number and identity of class members is not presently known, they can be identified through the review of records in Whirlpool's possession, custody, and control.

38.    Commonality and Predominance:  There are numerous questions of fact and law common to the members of the class that predominate over individual questions affecting any individual members, including, but not limited to:

a.    whether the dishwashers possess common defects;

b.    whether Whirlpool was aware that the dishwasher were and are defective;

c.    whether Whirlpool concealed the fact that the dishwashers were and are defective;

d.    whether Whirlpool omitted and concealed material facts from its communications and disclosures to Plaintiff and class members regarding the defect described herein;

13

e.      whether Whirlpool was obligated to disclose that the dishwashers suffer a common defect;

f.      whether Whirlpool breached its express warranties;

g.      whether Whirlpool breached its implied warranties;

h.      whether Whirlpool engaged in unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in connection with the sale of its dishwashers;

i.      whether Whirlpool has been unjustly enriched from the sale of its dishwashers; and,

j.      whether Plaintiff and members of the class are entitled to recover damages and, if so, the appropriate amount of those damages.

39.    Whirlpool's defenses, to the extent that any such defenses apply, are applicable generally to Plaintiff and class members and are not distinguishable as to proposed class members.

40.    Typicality:  The claims of Plaintiff are typical of the claims of the class members as a whole, all of whom have sustained and/or will sustain damages, including irreparable harm, as a proximate or legal result of the common course of conduct of Whirlpool as complained of in this Class Action Complaint.  The claims of the Plaintiff are typical of the class he seeks to represent because Whirlpool subjected all class members to the same course of conduct.

41.    Adequacy:  Plaintiff, on behalf of himself and all other similarly situated, will fairly and adequately protect the interest of all members of the class, and have retained attorneys highly experienced in the prosecution of complex consumer class action litigation.  Neither Plaintiff nor his attorneys have any interest which are antagonistic to the class.

42.    <u>Superiority</u>:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable.   While the aggregate damages sustained by the class are likely in the millions of dollars, the individual damages incurred by each class member resulting from Whirlpool's wrongful conduct are too small to warrant the expense of individual suits.   The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.   Individual class members do not have a significant interest in individually controlling the prosecution of separate actions, and the individual litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.   Plaintiff knows of no difficulties that could be encountered in the management of this action that would preclude its maintenance as a class action.   The class action in this matter would avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results in equal protection of the rights of each class member, all by way of the comprehensive efficient supervision of the litigation by a single court.

43.    Further, without class certification, the prosecution of separate actions by individual members of the class would create a risk of inconsistent and varying adjudication with respect to individual members of the proposed class that would establish incompatible standards of conduct for Whirlpool.   Whirlpool has acted or refused to act on grounds generally applicable to the class and, as such, final injunctive relief or corresponding declaratory relief with regard to the class members as a whole is appropriate.

44.     Notice of a certified class action and of any result or resolution of the litigation can be provided to class members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

45.     Plaintiff does not anticipate any difficulty in the management of this litigation.

**TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION**

46.     The claims alleged herein accrued upon discovery of the defective nature of the dishwashers.  Because the defect alleged herein is hidden and Whirlpool took steps to either conceal or fail to disclose the true character, nature, and quality of the dishwashers, Plaintiff and class members did not discover and could not have discovered it through reasonable and diligent investigation.

47.     Any applicable statutes of limitation have been tolled by Whirlpool's knowledge and actual misrepresentations and/or concealment and denial of the facts as alleged herein, which is ongoing.  Plaintiff and class members could not have reasonably discovered the true defective nature of their dishwashers until such time as the defect manifested itself in the form of a rack adjuster failure.  As a result of Whirlpool's active concealment of the defect and/or failure to inform Plaintiff and class members of the defect, any and all statutes of limitation otherwise applicable to the allegations herein have been tolled.

48.     Alternatively, the facts alleged above give rise to estoppel.  Whirlpool has actively concealed the defective nature of the dishwashers.  Whirlpool was and is under a continuous duty to disclose to Plaintiff and class members the true character, quality, and nature of the dishwashers.  At all relevant times, and continuing to this day, Whirlpool knowingly, affirmatively and actively misrepresented and concealed the true nature and quality of the dishwashers.  Given Whirlpool's failure to disclose this non-public information about the

defective nature of the dishwashers and because Plaintiff and class members could not reasonably have known that the dishwashers were thereby defective, Plaintiff and class members reasonably relied on Whirlpool's affirmative and/or ongoing concealment.  Based on the foregoing, Whirlpool is estopped from prevailing on any statute of limitations defense in this action.

49.    Additionally, Whirlpool is estopped from raising any defense of latches due to its own unclean hands as alleged herein.

## COUNT ONE
### Breach of Express Warranty
**(Asserted by Plaintiff Individually and on Behalf of the Nationwide Class
and the Virginia Class)**

50.    Plaintiff incorporates by reference each of the preceding allegations as if fully set forth herein.

51.    Whirlpool expressly warranted that for one year from the date of purchase it would pay for factory specified parts and repair labor to correct defects in materials or workmanship that existed when the dishwasher was purchased.

52.    Plaintiff and class members suffered rack adjuster failures within the warranty period, and contacted Whirlpool in order to make a warranty claim based on rack adjuster failures.

53.    However, Whirlpool, despite the express warranty above, denied Plaintiff and class members' warranty claims on the basis that the rack adjuster is considered "cosmetic" and therefore not covered under warranty.

54.    Additionally, Whirlpool expressly warranted that for years two through five after the date of purchase, it would pay for factory specified parts to correct nylon dish rack defects in materials or workmanship that existed when the dishwasher was purchased.

55.    The defective rack adjusters described herein are components of the nylon dish racks found in Plaintiff and class members' dishwashers and covered under Whirlpool's warranty.

56.    However, Whirlpool, despite the express warranty above, denied Plaintiff and class members' warranty claims on the basis that the rack adjuster is considered "cosmetic" and therefore not covered under warranty.

57.    Whirlpool did not provide any parts or services that corrected the rack adjuster failure, as required by the Whirlpool warranty.  As a result, Plaintiff and class members were force to purchase replacement parts and/or pay for service calls to repair their dishwashers out of their own pockets.

58.    As a direct and proximate result of the breach of said express warranties, Plaintiff and class members have been injured and are therefore entitled to damages.  Whirlpool's failure to repair Plaintiff and class members' dishwashers have caused the warranty to fail of its essential purpose, as a result of which Plaintiff and class members are entitled to damages flowing from the breach of express warranty.

**COUNT TWO**
**Breach of Implied Warranty**
**(Asserted by Plaintiff Individually and on Behalf of the Nationwide Class**
**and the Virginia Class)**

59.    Plaintiff incorporates by reference each of the preceding allegations as if fully set forth herein.

60.    The implied warranty of merchantability included with the sale of each Whirlpool dishwasher meant that Whirlpool warranted that its dishwashers would be merchantable, fit for the ordinary purposes for which dishwashers are used, pass without objection in the trade, be of average quality, and conform to promises and affirmations of fact made on containers of

merchantability is part of the basis for the bargain between Whirlpool and Plaintiff and class members.

61.     At the time of delivery, however, Whirlpool breached the implied warranty of merchantability because its dishwashers were defective as alleged above, would not pass without objection in the trade, are not fit for the ordinary purpose of washing dishes in a residential setting, and failed to confirm to the standard performance of like products used in the trade.

62.     Within a reasonable amount of time after the defect manifested itself to Plaintiff and class members, Whirlpool received notice of its breach of implied warranty, as described herein.  In addition, Whirlpool knew, or in the exercise of reasonable care should have known, that the dishwashers were defective prior to sale to Plaintiff and class members.

63.     Any implied warranty limitation cannot be enforced here because it is unconscionable.  A substantial disparity in the party's relative bargaining power existed such that Plaintiff and class members were unable to derive a substantial benefit from their dishwasher warranties.   An disparity existed because Whirlpool was aware that its dishwashers were inherently defective; Plaintiff and class members had no notice or ability to detect the problem; and Whirlpool knew that Plaintiff and class members would bear the cost of correcting any defect.   In this case, the disparity was increased by Whirlpool's knowledge and failure to disclose that the defect would substantially limit the dishwashers' intended use.

64.     The element of privity, if applicable here, exists because Whirlpool had direct written communications with Plaintiff and class members regarding the dishwashers in the form of warranty forms, registration cards, or similar documents; Whirlpool advertised the machines for sale via direct communications with Plaintiff and class members regarding the dishwashers through television, newspaper, the Internet, magazine advertisements, and the like; the dealers

who sold the dishwashers to Plaintiff and class members are Whirlpool's agents; Whirlpool entered into contracts with Plaintiff and class members through warranties; and Plaintiff and class members are third-party beneficiaries of warranties that ran from Whirlpool to their dealer agents.  Further, Whirlpool designed and manufactured the dishwashers intending for Plaintiff and class members to be the ultimate users of the dishwashers.

65.    As a direct and proximate result of Whirlpool's breach of its implied warranties, Plaintiff and class members purchased defective products which could not be used for their intended use of washing dishes in a residential setting, and have been damaged.

## COUNT THREE
### Fraudulent Concealment
**(Asserted by Plaintiff Individually and on Behalf of the Nationwide Class and the Virginia Class)**

66.    Plaintiff incorporates by reference each of the preceding allegations as if fully set forth herein.

67.    Whirlpool concealed material facts from Plaintiff and class members.  Whirlpool knew that its dishwashers contained the defect described herein but concealed those facts such that consumers in the United States had no such knowledge.

68.    Whirlpool had a duty to disclose the defect to Plaintiff and class members, but it failed to do so.

69.    Whirlpool also knew that Plaintiff and class members had no knowledge that its dishwashers were defective and that they did not have an equal opportunity to discover the facts. Whirlpool was in a superior position than Plaintiff and class members.

70.    By failing to disclose material facts concerning its defective dishwashers, Whirlpool intended to induce Plaintiff and class members into purchasing the dishwashers.

71.     Plaintiff and class members would not have purchased the dishwashers had they known that they are defective, or would not have paid as much as they did.

72.     Whirlpool benefited from the sale of its dishwashers as a result of its non-disclosure.

73.     When class members experienced rack adjuster failures, and called Whirlpool to make warranty claims, Whirlpool routinely failed to honor its warranties with consumers because it did not offer consumers who experienced rack adjuster failures the necessary repair or replacement cost.

74.     As a direct and proximate cause of Whirlpool's conduct, Plaintiff and class members have suffered damages.

75.     Whirlpool's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and class members such that punitive damages are appropriate.

### COUNT FOUR
### Unjust Enrichment
**(Asserted by Plaintiff Individually and on Behalf of the Nationwide Class
and Virginia Class)**

76.     Plaintiff incorporates by reference each of the preceding allegations as if fully set forth herein, and raises this cause of action in the alternative to Plaintiff and class members' warranty causes of action.

77.     Whirlpool caused its defective dishwashers to be distributed in a stream of commerce with knowledge that the dishwashers would be purchased by consumers who possessed a reasonable expectation that the dishwashers would be free from defects.

78.    Plaintiff and class members paid a premium price for the dishwashers that Whirlpool represented as being suitable for ordinary use, and merchantable, thereby conferring a tangible economic benefit upon Whirlpool.

79.    Whirlpool has further benefited, directly or indirectly, by avoiding the costs associated with correcting the defect, making repairs, and offering replacement rack adjusters at no charge to consumers.

80.    Whirlpool has and continues to retain that economic benefit at the expense of Plaintiff and class members.  Principals of equity and good conscious make it unjust for Whirlpool to retain the benefit conferred on it by consumers for the dishwashers, and Whirlpool should be required to repay Plaintiff and class members for this benefit.

**COUNT FIVE**
**Injunctive and Declaratory Relief**
**(Asserted by Plaintiff Individually and on Behalf of the Nationwide Class**
**and the Virginia Class)**

81.    Plaintiff incorporates by reference each of the preceding allegations as if fully set forth herein.

82.    There is an actual controversy between Whirlpool and Plaintiff concerning the existence of material defects in the dishwashers.

83.    Accordingly, Plaintiff and class members seek a declaration that the dishwashers contain common defects in their design and manufacture that will cause the dishwashers' rack adjusters to fail within an unreasonable amount of time.

84.    Whirlpool designed, manufactured, produced, tested, inspected, marketed, distributed, and sold dishwashers which contain material defects as described herein.  Based upon information and belief, Whirlpool continues to design, manufacture, produce, test, inspect, market, distribute and sell dishwashers which contain material defects as described herein.

85.    Plaintiff and class members have suffered actual damage or injury or run the risk of suffering actual damage or injury due to the Whirlpool dishwasher defect.  Whirlpool should be required to take corrective action to prevent further injuries, including:

a.    issuing warnings and/or notices to consumers and the class concerning the defect;

b.    immediately discontinuing the manufacturing, production, marketing, distributions, and sale of the defective dishwashers described herein; and,

c.    issuing replacement rack adjusters to consumers free of charge.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, on behalf of himself and the class, that this Court:

a.    determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23 and issue an order certifying the class as defined above, appointing Plaintiff as a class representative and his counsel as class counsel;

b.    award all damages to which Plaintiff and the class members are entitled;

c.    issue an order awarding injunctive relief by requiring Whirlpool to issue corrective actions as described herein;

d.    grant declaratory relief that the dishwashers described herein contain a defect which causes rack adjuster failures in the dishwashers;

e.    award reasonable attorneys' fees, costs, and expenses; and,

f.    grant such further and other relief this Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES TRIABLE.**

January 5, 2017                                  Respectfully Submitted,

                                                 /s/ Edward A. Wallace_____
                                                 Edward A. Wallace
                                                 Amy E. Keller, P74015
                                                 Wexler Wallace LLP
                                                 55 West Monroe Street, Suite 3300
                                                 Chicago, Illinois 60603
                                                 Telephone:    312.346.2222
                                                 Facsimile:    312.346.0022
                                                 Email:        eaw@wexlerwallace.com
                                                               aek@wexlerwallace.com

                                                 R. Brent Irby (*pro hac vice pending*)
                                                 S. Brett Holsombeck (*pro hac vice pending*)
                                                 McCallum, Hoaglund, Cook & Irby, LLP
                                                 905 Montgomery Highway
                                                 Suite 201
                                                 Vestavia Hills, Alabama  35216
                                                 Telephone:    205.824.7767
                                                 Facsimile:    205.824.7768
                                                 Email:        birby@mhcilaw.com
                                                               bholsombeck@mhcilaw.com

                                                 *Counsel for Plaintiff and the Putative Class
                                                 and Subclass*