UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **WARREN BURCH, JAMES BODLEY,** | * | |
| **KYLE MATSON, RONALD** | * | |
| **McCALLUM,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Case No.: 1:17-cv-18** |
| | * | **Honorable Paul L. Maloney** |
| **WHIRLPOOL CORPORATION,** | * | |
| | * | |
| **Defendant.** | * | |

_____

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION…………………………………………………………… 1

II.     BACKGROUND…………………………………………………………. 4

        A.      Summary of Plaintiffs' Allegations and Claims………………………… 4

        B.      Procedural History of the Litigation……………………………………… 5

        C.      Settlement Negotiations and Discovery…………………………………… 7

III.    TERMS OF THE PROPOSED SETTLEMENT…………………………...…… 9

        A.      The Settlement Class………………………………………………..…..…… 9

        B.      The Settlement Benefits………………………………………………..…   10

        C.      Attorneys' Fees, Costs, and Named Plaintiff Service Awards…………...   12

        D.      The Claims Process…………………………………………………….....   14

        E.      The Proposed Notice Plan……………………………………………….   15

IV.     ARGUMENT…………………………………………………………….   16

        A.      The Proposed Settlement Warrants Preliminary Approval………………   16

                1.      The Settlement Was Reached After Exchange of Substantial Information, Motion Practice, and Arms-Length Negotiations Between Experienced Counsel with the Assistance of a Respected Mediator. …………………………………………………………..…………   17

                2.      The Settlement Provides Substantial Relief Which Outweighs the Mere Possibility of Future Relief Through Protracted and Costly Litigation, Particularly Considering Plaintiffs' Likelihood of Success on the Merits. ………………………………………………………….. 20

                3.      The Parties and Their Counsel Believe the Settlement is Fair and Reasonable. ……………………………………………………. 22

4.      Preliminary Approval is Appropriate Under the Recent Amendments to Rule 23. …………………………………………………………... 23

B.      The Settlement Class Should Be Certified…………………...…………. 25

1.      Numerosity……………………………………………………...…. 25

2.      Commonality…………………………………………………….... 26

3.      Typicality…………………………………………………………. 26

4.      Adequacy…………………………………………………………. 27

5.      Predominance……………………………………………………... 28

6.      Superiority………………………………………………………... 29

C.      The Court Should Approve the Proposed Form and Method of Class Notice …………………………………………………………………… 30

V.      CONCLUSION………………………………………………………... 31

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                **Page**

*American Copper & Brass, Inc. v. Lake City Indust.*, 2016 WL 6272094 (W.D.Mich. March 1, 2016) …………………………………………………………………..……… 13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ……………………… 25, 29

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1196 (2013) …… 28, 30

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) …………… 26

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) …………………… 28

*Bert v. AK Steel Corp.*, WL 4693747, at *2 (S.D.Ohio Oct. 23, 2008) …………… 17

*Blessing v. Sirius XM Radio Inc.*, 507 F.App'x 1,3 (2d Cir. 2012) …………….…… 18

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 480, 100 S.Ct. 746 (1980) ……..……… 12

*Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977) …………… 28

*Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) …………………… 25,26,28

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 244 (S.D.Ohio 1991) ……………………………………………………………..…… 18

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 281 (6th Cir. 2016) ……… 12

*Gen. Tel. Co. of the Sw. v. Falton*, 457 U.S. 147, 156-57 (1982) ………………… 26

*Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860 (E.D.Mich. December 12, 2013) ……………………………………………………………………………… 13,19

*Hillson v. Kelly Services, Inc.*, 2017 WL 279814 at *6 (E.D.Mich. January 23, 2017) ……………………………………………………………………………… 17

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ……………………… 25,26

*In re Cardiazem CD Antitrust Litig.*, 218 F.R.D. 508, 519 (E.D.Mich. 2003) ……… 27

iv

*In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) ……… 21,30

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp. 2d 1040, 1055 (S.D. Tex. 2012) …………………………………………………………… 27

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D.Ohio 2001) ……………………………………………………………….……………… 18,20

*In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D.Mich. Aug. 2, 2010) ……………………………………………………………………………...… 16,17,19

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 250-51 (D. Del. 2002) ………………………………………………………………………………….. 27,29

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 412 (6th Cir. 2012) *vacated* 133 S.Ct. 1722 (2013) *reinstated*, 722F3d 838 (6th Cir. 2013), *cert.denied* 134 S.Ct. 1277 (2014) ……………………………………………………………. 10,24,25,28

*Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *4 (E.D.Mich. July 13, 2006) ………………………………..……………………………………………………… 17

*Int'l Union, United Auto, Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ……...…………………………………… 16

*Int'l Union, United Auto., Aerospace & Agr. Impl. Workers of Am. v. Ford Motor Co.*, 2008 WL 4104329, *26 (E.D.Mich. Aug. 29, 2008) …………………………………………… 22

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D.Mich. 2006) ……… 16

*Kinder v. Nw. Bank*, 278 F.R.D. 176, 186 (W.D.Mich. 2011) ……………………… 30

*Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D.Ill. 2001) ………………… 18

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ………….… 30

*Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) …………………………… 19

*P State Teacher's Ret. Sys. v. Jen. Motors Co.*, 315 F.R.D. 226, 236 (E.D.Mich. 2016) ……………………………………………………………………………………… 19

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ……………………………………………………………………………… 22

*Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 338 (M.D.Tenn. 2008) ……………………………………………………………………………… 25

*Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976)……………… 27

*Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *8 (E.D.Mich. Aug. 2, 2010) ………………………………………………………………………… 17

*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, 2015 WL 9413143 (W.D.Ky. December 22, 2015) ……………………………………………………………………..… 13

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 396-97 (6th Cir. 1998) (*en banc*) ……… 25,26

*Sullivan v. DB Ins. Inc.*, 667 F.3d 273, 299-302 (3d Cir. 2011) (*en banc*) …………… 28,29

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F.Supp. 2d 521, 532-33 (E.D.Ky. 2010) ……………………………………………………………………..……… 22

*UAW*, 497 F.3d at 631…………………………………………………………… 16,21

## **Statutes**

Manual for Complex Litigation §21.632 (4th ed. 2004)………………………………… 16
Newberg §13:15……………………………………………………………………… 16

## **Rules**

Fed.R.Civ.Pro 15(a)(1)(B) ……………………………………………………… 5
Fed.R.Civ.P. 23(a)(1) …………………………………………………………… 25
Fed.R.Civ.P. 23(a)(2) …………………………………………………………… 26
Fed.R.Civ.P. 23(a)(3) …………………………………………………………… 26
Fed.R.Civ.P. 23(a)(4) …………………………………………………………… 27
Fed.R.Civ.P. 23(b)(3) ……..……………………………………………… 10,25,28,29
Fed.R.Civ.P. 23(b)(3)(D) ………………………………………………………… 25
Fed.R.Civ.P. 23(c)(2) …………………………………………………………… 30
Fed.R.Civ.P. 23(e)(1)(B) (2018 amendment) …………………………………… 23,30
Fed.R.Civ.P. 23(e)(2) …………………………………………………………… 23
Fed.R.Civ.P. 23(e)(2)(C)(i) (2018 amendment) ………………………………… 24
Fed.R.Civ.P. 23(e)(2)(C)(ii) (2018 amendment) ………………………..………… 24

Fed.R.Civ.P. 23(e)(2)(C)(iii) (2018 amendment) …………………..……………    24
Fed.R.Civ.P. 23(e)(2)(C)(iv) (2018 amendment) ………………………………    24
Fed.R.Civ.P. 23(e)(2)(D) (2018 amendment) ……………………………………    24
Fed.R.Civ.P.23(h)(1) ……………………………………………………………    24
Fed.R.Civ.Pro 54(d) ……………………………………………………………    13
Fed.R.Civ.P. 54 (d)(2) …………………………………………………………    24

## __Treatises__

Conte & Newburg, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002) ……    7,16

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Warren Burch, James Bodley, Kyle Matson, and Ronald McCallum ("Plaintiffs") move for preliminary approval of the proposed Class Action Settlement (the "Settlement").[1]  The Settlement will resolve this litigation, including the related case transferred to this District and recently consolidated with this action, *Bodley, et al. v. Whirlpool Corporation*, Case No. 1:18-cv-594.  In support of their motion, Plaintiffs rely on the incorporated memorandum of law in support and the exhibits attached hereto.

## I.  INTRODUCTION

Plaintiffs claim that certain dishwashers manufactured by Whirlpool ("Class Dishwashers") are defective in that the plastic axels on the wheels of the upper dish rack adjusters break, and the upper dish rack may become unusable.  Similar allegations and claims were made in another related case, *Bodley, et al. v. Whirlpool Corporation,* which was transferred to this District in May 2018 and recently consolidated with this action.  The proposed Settlement Agreement, if approved by the Court, will resolve all Plaintiffs' claims against Whirlpool arising from the alleged defect at issue.

Plaintiffs and Whirlpool reached this agreement following dispositive motion practice and the exchange of voluminous documents and information ---both before and after the Settlement was reached --- including over a thousand pages of documents addressing the nature and scope of the rack adjuster issue.  The Settlement resulted from hard-fought and adversarial negotiations over a sixteen (16) month period with the assistance, input, and oversight of a

---

[1] The proposed Settlement Agreement ("Settlement Agreement") is attached hereto as Exhibit 1.  Unless otherwise noted, all terms in this Motion have the same meaning as set forth in the Settlement Agreement.  Additionally, a proposed Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") is attached hereto as Exhibit 2 and the Declaration of R. Brent Irby ("Irby Decl.") is attached as Exhibit 3.

highly experienced and respected mediator, Jonathan B. Marks of Marks ADR, LLC.  The time and effort spent by all parties to this litigation --- under the auspices of Mr. Marks --- demonstrate the rigor, intensity, and thoroughness of the mediation efforts, as well as the parties' commitment to working constructively toward a resolution.

Plaintiffs respectfully submit that the Court grant preliminary approval of the proposed Settlement because it addresses the reasonable objectives of the litigation without the uncertainties class members would otherwise face in continued litigation.  Indeed, the parties were careful to craft comprehensive relief, encompassing the circumstances of effected dishwasher owners and providing as close to full relief to them as possible.  The class benefits are tethered to the damages incurred by class members, and include:

> •      For settlement class members who incurred past damages in paying out-of-pocket for a repair of their upper rack adjuster, they can make a claim to receive a 100% cash reimbursement of documented repair costs.  (Settlement Agreement, IV(B)(6)(c) & 8(c).)  Class members who cannot document repair costs can simply submit a signed declaration attesting to such repairs and payments and receive a cash payment ranging from $15 to $90 depending on the type of repair received[2]; or, at their election, rebates ranging from 15% to 25% off the purchase price of certain new KitchenAid brand appliances, including a 25% rebate on KitchenAid brand dishwashers.  (*Id.*, IV(B)(6)(d) & (8)(d).)

> •      For settlement class members whose dishwasher still contains the plastic rack upper adjuster at issue,[3] on a going forward basis they can make a claim for a free stainless steel

---

[2] Settlement class members claiming he $90 cash payment for repair costs must provide, in addition to their signed declaration, a photograph of the replacement stainless steel rack adjuster now in their unit.  (*Id.*, IV(B)(8)(d).)

[3] As explained in more detail in Section II(A), Whirlpool stopped manufacturing and using a *plastic* wheel axel design, in combination with a particular type of rail, in its dishwasher upper rack adjusters in August 2014.  Instead, Whirlpool began manufacturing and utilizing a replacement *stainless steel* upper rack adjuster that does not fail and has resolved the plastic upper rack adjuster issue presented in this litigation.

replacement rack adjuster kit and free installation should they incur a failure within twelve (12) months of receiving class notice.  (*Id.*, IV(B)(6)(e)(1).)    For months thirteen (13) to twenty-four (24) following class notice, and regardless of whether they incur an axel failure or not, these settlement class members can elect to make a claim for a free stainless steel replacement rack adjuster kit, or a $15 cash payment, or rebates ranging from 10% to 30% on the purchase price of a KitchenAid stand mixer or blender.  (*Id.*, IV(B)(6)(e)(2).)

•    Settlement class members who previously received a free repair of their dishwasher with the stainless steel replacement adjuster are eligible to receive a 15% rebate on the purchase of a KitchenAid brand stand mixer.  (*Id.*, IV(B)(10)(c).)

In addition to the benefits described above, Whirlpool will pay all costs associated with state-of-the-art notice and claims administration performed by a nationally-respected class action settlement administrator.  (*Id.*, V; *see also* Declaration of Cameron Azari, attached as Exhibit D to Irby Decl.)  Whirlpool has also agreed to pay all reasonable attorneys' fees and costs, *separately* from, and in addition to, the benefits to Class Members.  (*Id.*, VIII(A).)

Plaintiffs respectfully submit that the proposed Settlement is well within the range of reasonableness given the benefits provided to Class Members and the risks of continuing litigation.  These risks include the inherent uncertainty associated with litigation of this type, including class certification, summary judgment, trial, and any appeals.  The risks are particularly evident here given this Honorable Court's previous grant in full of Whirlpool's Partial Motion to Dismiss.  [*Burch* ECF No. 22.]

Plaintiffs thus request that the Court enter an order: preliminarily approving the Settlement; certifying the Class for settlement purposes only; appointing Class Counsel and Class Representatives to represent the Class; approving dissemination of notice of the Settlement to the Class; establishing deadlines for Class Members to opt-out or object to the Settlement; and setting a Final Approval hearing at which the Court will evaluate whether the proposed

3

Settlement is fair, reasonable, and adequate and consider a separate Motion for Attorneys' Fees and Reimbursement of Expenses and Class Representative Service Awards.

## II.  BACKGROUND

### A.    Summary of Plaintiffs' Allegations and Claims.

In this case and in the *Bodley* action recently consolidated before this Court, Plaintiffs allege that certain Whirlpool-manufactured dishwashers are defective in that the plastic axel used in the upper rack adjusters becomes brittle when exposed to repeated high temperature wash cycles and can break, causing the dishrack to disconnect from the rail and collapse.  (*See Burch* ECF No. 13; *Bodley* ECF No. 73.)

Whirlpool manufactured Kitchen-Aid-brand dishwashers equipped with a plastic adjuster assembly that included a plastic wheel axel design, in combination with a particular type of rail (referred to internally by Whirlpool as the "V-Rail"), from October 2010 to August 2014.  (Irby Decl., ¶5.)  During that time period, approximately 799,549 dishwashers with the combination of the plastic axel and V-Rail design were manufactured.  (*Id*.)  An internal investigation by Whirlpool into customer issues surrounding the plastic axel determined that tighter manufacturing tolerances in dishwasher models that used both the plastic axel and V-Rail design could put higher stresses on the plastic axels and cause them to break over time.  (*Id*.)  Whirlpool determined that any given dishwasher could have small manufacturing variations that, in combination, could lead to tighter tolerances and make a given dishwasher potentially more or less prone to axel failure.  (*Id*.)  In August 2014, Whirlpool discontinued production of dishwashers using the combination of the V-Rail and plastic axel design.  (*Id*.)  Whirlpool prepared a repair kit using a stainless steel rack adjuster assembly to replace the plastic rack adjuster assembly in its dishwashers that experience a plastic axel failure in the field.  (*Id*.)  The

4

stainless steel replacement was built to withstand the tighter manufacturing tolerances identified by Whirlpool.  (*Id.*)

Plaintiffs contend that the plastic axels in their dishwashers failed, and that other similarly situated consumers incurred out-of-pocket costs in purchasing replacement rack adjusters in an attempt to fix the problem with their dishwashers.  (*Burch* ECF No. 13; *Bodley* ECF No. 73.)  In their Complaints, Plaintiffs assert claims for breach of express and implied warranties, fraudulent concealment, violations of state consumer protection statutes, unjust enrichment, and injunctive relief (*Id.*)  Whirlpool contests these allegations.

Plaintiffs do not allege any claims for personal injury or emotional distress.

**B.    Procedural History of the Litigation.**

On January 5, 2017, Plaintiff Warren Burch filed his action on behalf of himself and a putative nationwide class in this Court (*Burch* ECF No. 1) (hereafter the "*Burch* action").  On March 13, 2017, Whirlpool filed a Partial Motion to Dismiss.  (*Burch* ECF No. 7.)  Pursuant to Fed.R.Civ.Pro. 15(a)(1)(B), Plaintiff Burch filed an Amended Complaint on April 13, 2017.  (*Burch* ECF No. 13.)  On May 1, 2017 Whirlpool again filed a Partial Motion to Dismiss, which Plaintiff Burch opposed on May 30, 2017.  (*Burch* ECF Nos. 16 & 18.)

On September 12, 2017, a hearing was conducted on Whirlpool's Partial Motion to Dismiss at the WMU Thomas M. Cooley Law School.  On September 28, 2017, this Honorable Court entered an Order and Opinion granting Whirlpool's Partial Motion to Dismiss, dismissing claims for breach of express warranty, fraudulent concealment, and unjust enrichment.  (*Burch* ECF No. 22.)

As discussed in more detail in Section II(C) below, shortly after the hearing on the Partial Motion to Dismiss, counsel for Whirlpool and Plaintiff Burch began discussing the possibility of

exploring settlement.  (Irby Decl., ¶6.)  After several discussions and the exchange of relevant information, the parties in *Burch* conducted a mediation with Jonathan Marks of Marks ADR, LLC on December 11, 2017 (*Id.*, ¶7)  During the sixteen (16) months that followed, counsel for the parties continued to negotiate in good faith with the substantive involvement of Mr. Marks and while keeping the Court apprised of the status of their settlement efforts.  (*Burch* ECF Nos. 28 & 31.)

On September 19, 2017, Plaintiffs James Bodley and Kyle Mason filed their action against Whirlpool in the Northern District of California (hereafter the "*Bodley* action").  (*Bodley* ECF No. 1.)  Plaintiffs Bodley and Mason filed their First Amended Complaint on November 6, 2017.  (*Bodley* ECF No. 24.)  On December 15, 2017, Whirlpool moved to dismiss, stay, or transfer the *Bodley* action to this Court in light of the separate *Burch* class action that had previously been filed in this Court.  (*Bodley* ECF No. 34.)  On May 24, 2018, the *Bodley* action was transferred to this District and re-assigned to this Court on May 28, 2018.  (*Bodley* ECF Nos. 54 & 55.)

Upon transfer of the *Bodley* action to this Court, counsel for Plaintiff Burch reached out to counsel for Plaintiffs in *Bodley* and apprised them of the ongoing settlement efforts and status in the *Burch* action.  (Irby Decl., ¶9.)  Upon obtaining approvals and authorizations from Whirlpool, counsel for Plaintiff Burch shared certain documents and information pertinent to settlement with counsel in *Bodley* and invited their substantive involvement and participation in the ongoing settlement negotiations.  (*Id.*)

On August 9, 2018, Plaintiffs Bodley and Mason filed their Second Amended Complaint, adding another named Plaintiff, Ronald McCallum.  (*Bodley* ECF No. 73.)  In response, Whirlpool filed a Motion to Dismiss and a Motion for Partial Summary Judgment.  (*Bodley* ECF

Nos. 77 & 81.)  On January 15, 2019, the parties in the *Bodley* action requested a temporary stay on responsive briefing and consideration of Whirlpool's motions in light of the parties' continued negotiation efforts to settle both the *Burch* and *Bodley* actions, which the Court granted.  (*Bodley* ECF No. 90.)

C.   **Settlement Negotiations and Discovery.**

As stated, shortly after the hearing on Whirlpool's Partial Motion to Dismiss, counsel for Whirlpool and Plaintiff *Burch* began discussing the possibility of exploring settlement.  (Irby Decl., ¶6.)  These discussions were prompted by the parties' desire to avoid the expense, uncertainties, and burden of protracted litigation.  (*Id*.)  To facilitate those discussions, counsel exchanged relevant information and documents pertaining to the alleged defect, including information surrounding the scope and number of dishwashers and models in play; the time period when such dishwashers were manufactured; remedial efforts and customer service efforts by Whirlpool; Whirlpool's internal investigation of the issue; design and costs surrounding replacement axel parts; costs related to parts and labor in replacing broken axels; service incident rates and warranty claims; and identification of class members via Whirlpool's available databases and information.  (*Id*.)

After analysis of this information and several discussions, the parties elected to schedule a mediation and chose Mr. Marks as the mediator.  (*Id*., ¶7.)  Mr. Marks is an experienced mediator known nationally for his skill in facilitating resolution of class actions and other complex litigation.  Following the exchange of mediation briefs and telephonic conferences with Mr. Marks, counsel for the parties in *Burch* conducted a mediation in Chicago on December 11, 2017.  (*Id*.)

While the parties did not reach an agreement at mediation, they did make strides in formulating the structure of a settlement that would encompass both retroactive relief and prospective relief for the various circumstances of dishwasher owners, depending on the nature of their injury (i.e., those who paid for repairs, those who had free repairs, those who have had no repairs, etc.).  (*Id.*, ¶8.)  In the months following the mediation, counsel continued to negotiate the substantive terms of the relief to the class based on this structure, with counsel for Plaintiff *Burch* preparing a term sheet of material terms that the attorneys worked from.  (*Id.*)  Counsel exchanged numerous proposals and edits to the working term sheet and conducted multiple settlement conferences.  (*Id.*)  Both separately and with the assistance of Mr. Marks, the parties continued extensive negotiations throughout 2018.  (*Id.*)

Upon transfer of the *Bodley* action to this District, documents and information pertinent to the ongoing settlement efforts were shared with counsel for *Bodley*, who became substantively involved in the ongoing settlement efforts.  (*Id.*, ¶9.)  For months throughout 2018, the parties exchanged numerous offers and counter-offers, and negotiated the points of each vigorously.  (*Id.*)  Multiple settlement conferences were conducted among all Plaintiffs' counsel, as well as among counsel for all parties.  (*Id.*)  Mr. Marks continued to assist with the ongoing settlement negotiations.  (*Id.*)  Additionally, Whirlpool continued to provide counsel information pertaining to the scope of the effected washers, customer service efforts, and remedial costs.  (*Id.*)

By November 15, 2018, the parties had reached an agreement-in-principle on all of the material terms of substantive relief for the Settlement Class, and executed a written term sheet outlining those terms.  (*Id.*, ¶10.)

After the parties reached this agreement-in-principle on all material terms of substantive relief to the Settlement Class, they began negotiating the amount of attorneys' fees and costs that

8

Whirlpool would pay to Class Counsel (subject to Court approval) and the amount of service awards Whirlpool would pay to the Class Representatives (also subject to Court approval).  (*Id.*, ¶11.)  At all times, the issue of attorneys' fees and costs and Class Representative service awards was negotiated <u>separately</u> from, and in addition to, the settlement relief to Class members.  (*Id.*)  Like the other negotiations, these negotiations were conducted at arms-length and with the assistance of Mr. Marks.  (*Id.*)  Following negotiations, the parties reached agreement in principle on those issues on February 28, 2019.  (*Id.*)

After the Settlement terms were reached in principle, but before the final Settlement Agreement was executed, the parties engaged in additional confirmatory discovery.  (*Id.*, ¶12.)  Specifically, Whirlpool produced, and Class Counsel analyzed, over 1,000 pages of documents evidencing additional information surrounding Whirlpool's efforts to address the combined plastic axel and V-Rail design issue from an engineering/root cause perspective, a design perspective, and a service perspective; the number of affected dishwashers by year and model number; costs related to replacement parts and labor; information demonstrating the efficacy of the replacement stainless steel repair kit; and other material analyzed to confirm the fairness of the proposed Settlement.  (*Id.*)  The exchange of this information and material throughout the settlement process allowed the parties to sufficiently understand the relative strengths and weaknesses of their positions when fashioning the proposed Settlement.  (*Id.*)

### III.    TERMS OF THE PROPOSED SETTLEMENT

### A.    <u>The Settlement Class</u>.

The proposed Settlement Class is defined as:

> All persons in the United States and its territories who (i) purchased a new Class Dishwasher, (ii) acquired a Class Dishwasher as part of the purchase of a home, residence, or structure, or (iii) received as a gift, from a donor meeting those

9

requirements, a new Class Dishwasher not used by the donor or by anyone else after the donor purchased the Class Dishwasher.

* * *

"Class Dishwasher" means a Whirlpool-manufactured, KitchenAid-brand dishwasher manufactured with a Plastic Premium Adjuster in combination with a V-Rail System between October 2010 and the Notice Date.

(Settlement Agreement, I(MM) & (H).)  A list of the dishwasher models that comprise "Class Dishwashers" will be posted on the Settlement website.   The Settlement Class includes approximately 799,000 members.  (Irby Decl., ¶5.)

## B. __The Settlement Benefits.__

The Settlement provides substantial economic benefits to the Class and addresses the reasonable objectives of the litigation.  As stated, the parties were careful to craft comprehensive and appropriate remedies that account for the various circumstances of class members depending on the nature of their injury/damages.  *See, e.g., In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 421 (6th Cir. 2012) *vacated* 133 S.Ct. 1722 (2013), *reinstated*, 722 F.3d 838 (6th Cir. 2013), *cert. denied* 134 S.Ct. 1277 (2014) ("[a]ssuming plaintiffs are successful regarding liability or the parties resolve the case by settlement, we urge the parties and the district court to revisit the issue of whether the liability class should be subdivided into subclasses in order to determine appropriate remedies.  For the purpose of determining damages, class members who were injured at the point of sale and also experienced a mold problem might be placed in one Rule 23(b)(3) subclass, while class members who were injured at the point of

sale but have not yet experienced a mold problem might be placed in a separate Rule 23(b)(3) subclass.")[4]

Based on Class Counsel's investigation into each named Plaintiff's claims, interviews with other consumers, and information supplied by Whirlpool, it was determined that some class members paid out of pocket for repairs, while others did not; some class members received or made a repair with the replacement stainless steel repair kit, while some received or made a repair with another plastic axel assembly repair kit; and some class members incurred no failure and had no repair.  (Irby Decl., ¶13.)    Accordingly, the parties fashioned retroactive and prospective settlement relief with these circumstances in mind:

> •     For settlement class members who incurred past damages in paying out of pocket for a repair of their upper rack adjuster, they can make a claim to receive a 100% cash reimbursement of documented repair costs.  (Settlement Agreement, IV(B)(6)(c) & (8)(c).)   Class members who cannot document repair costs can submit a signed declaration attesting to such repairs and payments and receive a cash payment ranging from $15 to $90 depending on the type of repair received[5]; or, at their election, rebates ranging from 15% to 25% off the purchase price of certain new KitchenAid

---

[4] Although the Settlement does not create formal subclasses, it effectively accomplishes the same end.  (Settlement Agreement, I(R) – (V).)

[5] Class members whose upper rack adjuster was repaired with the replacement stainless steel upper rack adjuster repair kit can receive a $90 cash payment, which represents the average cost of the stainless steel repair kit ($15) and a portion of the labor involved in its installation, recognizing that many consumers were encouraged to and did self-install the repair kit.  (Irby Decl., ¶¶13-14.)   In addition to their signed attestation under oath, these class members must provide a photograph of the stainless steel rack adjuster now in their unit.   (Settlement Agreement, IV(B)(8)(d).)   Settlement class members whose upper rack adjuster was repaired with another plastic upper rack adjuster can receive a cash payment of $15, which represents the average cost of the Plastic Premium Adjuster Assembly repair kit and a portion of the labor involved in its installation, recognizing that many consumers were encouraged to and did self-install the repair kit.  (Irby Decl., ¶¶13-14.)

brand appliances[6], including a 25% rebate on KitchenAid brand dishwashers.  (*Id.*, IV(B)(6)(d) & (8)(d).)

• For settlement class members whose dishwasher still contains the plastic rack upper adjuster at issue, on a going forward basis they can make a claim for a free stainless steel replacement rack adjuster kit and free installation should they incur a failure within twelve (12) months of receiving class notice.  (*Id.*, (B)(6)(e)(1).)  For months thirteen (13) to twenty-four (24) following class notice, and regardless of whether they incur a failure or not, these settlement class members can elect to make a claim for a free stainless steel replacement rack adjuster kit, or a $15 cash payment[7], or rebates ranging from 10% to 30% on the purchase price on a KitchenAid stand mixer or blender.  (*Id.*, IV(B)(6)(e)(2).)

• Settlement class members who previously received a free repair of their dishwasher with the stainless steel replacement adjuster are eligible to receive a 15% rebate on the purchase of a KitchenAid brand stand mixer.  (*Id.*, IV(B)(10)(c).)

## C.    **Attorneys' Fees, Costs, and Named Plaintiff Service Awards.**

The Settlement Agreement contemplates Class Counsel petitioning for an award of attorneys' fees and litigation costs, subject to Court approval.  (Settlement Agreement, VIII.)

Subject to Court approval, under the Settlement Agreement Whirlpool has agreed to pay Lead Class Counsel R. Brent Irby and Edward Wallace $715,000 for attorneys' fees and up to $28,000 for reimbursement of litigation expenses and costs incurred.  (*Id.*, VIII(B).)  Subject to Court approval, under the Settlement Agreement Whirlpool has agreed to pay Class Counsel

---

[6] The range of MSRPs for the rebate-eligible appliances under the Settlement is:  (a) KitchenAid brand dishwashers = $849 to $2,199, with an average MSRP of $1,214; (b) KitchenAid brand blenders = $129 to $1,299, with an average MSRP of $595; (c) KitchenAid brand stand mixers = $259 to $749, with an average MSRP of $556.  (Irby Decl., ¶15.)  All rebates available to class members are valid for one (1) year and are transferrable and stackable. (Settlement Agreement, IV(B)(18).)

[7] This $15 amount reflects the cost of the stainless steel rack adjuster repair kit.  (Irby Decl., ¶14.)

Nathan Carpenter and Rebecca Bell-Stanton $400,000 for attorneys' fees and for reimbursement of litigation expenses and costs incurred.  (*Id.*, VIII(C).)  The attorneys' fees sought by Class Counsel fall within a reasonable range accepted in the Sixth Circuit under either a lodestar analysis or a percentage-of-the-fund analysis. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 281 (6th Cir. 2016) ("When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefit to the class", and finding that the value of the benefit to the class in a claims-made settlement can be based upon the total relief class counsel makes available to all class members, "whether or not they exercise it.", quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480, 100 S.Ct. 745 (1980).).

The Settlement also provides for service awards of $2,500 to each of the named Plaintiffs, who are the representatives in the Settlement, for their time and effort in prosecuting the litigation on behalf of the Class.  (Settlement Agreement, VIII(D).)  These amounts fall within the range of service awards routinely approved in this Circuit.  *See, e.g., Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860 (E.D.Mich. December 12, 2013) (finding $5,000 awards to the two (2) class representatives reasonable); *American Copper & Brass, Inc. v. Lake City Indust.*, 2016 WL 6272094 (W.D.Mich. March 1, 2016) (awarding named plaintiff an incentive fee of $10,000); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, 2015 WL 9413143 (W.D.Ky. December 22, 2015) (finding that a $5,000 incentive award would neither be excessive nor unfair to the class).

If approved, and as stated above, Whirlpool will separately pay these fees, litigation expenses, and service awards. (Settlement Agreement, VIII(A).)  These amounts will not reduce the amount of benefits available to Class Members.  Pursuant to Fed.R.Civ.Pro. 54(d), Class Counsel will move the Court for approval of these amounts twenty (20) days prior to the opt-out

and objection deadline and will post a copy of the motion papers on the Settlement website, enabling Settlement Class Members to review them prior to the deadline to opt-out or object to the Settlement.  (*Id.*, VI(B)(2)(d).)  Importantly, the Settlement is in no way contingent on the award of attorneys' fees or service awards being approved.  (*Id.*, VIII(F).)

     **D.**    <u>**The Claims Process**</u>.

Whirlpool will search its customer information databases to attempt to identify Settlement Class Members.  (*Id.*, VI(5).)  For Settlement Class Members identified through this process, the mailed and emailed notices will include a pre-printed unique claim identification number for each Settlement Class Member that the Settlement Class Member will enter into the online claim form.  (*Id.*)  The Settlement Administrator will pre-populate the Settlement Class Member claim forms with the information from the customer information databases necessary for the Settlement Class Member to make a claim for benefits.  (*Id.*)

The claim forms are straight-forward and require certain basic contact information and the serial and model number of the class member's dishwasher.  (Exhibit 1 to the Settlement Agreement.)  They will then check several eligibility boxes on the Claim Form, available online or in hard copy, and then e-sign or mail the Claim Form to the Settlement Administrator.  *Id.*  To the limited extent documentation is required, such as for Class Members seeking reimbursement for repair costs related to a plastic axel failure, they will be asked to submit supporting documents such as copies of service receipts, credit card statements, or other documentation evidencing payments by the Settlement Class Members.  (*Id.*; Settlement Agreement, IV(B)(4).)  The Settlement Class Members will then be asked to sign and certify that the information they provided was accurate.  *Id.*

14

For the retroactive class benefits, Settlement Class Members will have one hundred thirty-five (135) days to complete and submit claim forms.  (Settlement Agreement, VI(B)(15).) For prospective benefits, class members need only contact Whirlpool through a toll-free telephone number within ninety (90) days of a plastic axel failure, should a failure occur within twelve (12) months following class notice.  (*Id*., IV(B)(11).)  During thirteen (13) through twenty-four (24) months following class notice, Settlement Class Members need only submit to the Settlement Administrator a straight-forward claim form confirming basic contact information, dishwasher model and serial number, and checking certain eligibility boxes. (Exhibit 1 to the Settlement Agreement.)

### E.    The Proposed Notice Plan.

Within thirty (30) days of the Court's entry of an Order granting preliminary approval, the Settlement Administrator will send, by first class mail, a copy of a short-form notice to every Class Member who can reasonably be identified in Whirlpool's customer information databases. (*Id*., VI(B)(2)(a); Declaration of Cameron Azari, attached as Exhibit D to Irby Decl.; *see also* Exhibit B to Irby Decl.)  The Settlement Administrator will also send the short-form notice by email to every Settlement Class Member whose email address can be reasonably identified from Whirlpool's customer information records.  (*Id*.)  The Settlement Administrator will take commercially reasonable steps to update Class Member addresses.  (Settlement Agreement, V(G).)  The mailed and emailed notices will advise Class Members if they are pre-qualified class members.  (Settlement Agreement, IV(B)(5).)  The Settlement Administrator will also provide publication notice and additional media notice to facilitate participation by class members. (Declaration of Cameron Azari, attached as Exhibit D to Irby Decl.)

The Settlement Administrator will establish a website that will provide information sufficient to inform Class Members of the essential terms of the Settlement Agreement, including the FAQ/Long Form Notice, and the procedure and deadlines for objecting to or excluding themselves from the Settlement.  (Settlement Agreement, V(H) and Exhibit 3 to it; Cameron Azari Decl., ¶30.)  The website will also provide the claim form and associated instructions for submitting a claim online, including the ability to upload any required documentation.  (*Id*.)  As previously stated, Whirlpool has agreed to pay all reasonable costs of notice and settlement administration on top of the benefits paid to the Settlement Class Members who file claims. (Settlement Agreement, V(B).)

## IV.  ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval.

The Sixth Circuit and federal courts in Michigan have recognized that the law favors the settlement of class action lawsuits.  *Int'l Union, United Auto, Aerospace, and Agric. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D.Mich. 2006) (noting "the general federal policy favoring the settlement of class actions").

The procedure for review of a proposed class action settlement is well-established two-step process.  Conte & Newburg, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval."  *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D.Mich. Aug. 2, 2010).  The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed

settlement made by a court on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations from the settling parties.  *Manual for Complex Litigation* §21.632 (4th ed. 2004).

Courts often consider "many of the same factors" that would be relevant at *final* approval, "though with somewhat less scrutiny."  Newberg §13:15.  In the Sixth Circuit, those factors are: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.  *UAW*, 497 F.3d at 631.  Other district courts in Michigan have found that preliminary approval should be given where the proposed settlement (1) does not disclose grounds to doubt its fairness, and (2) falls within the range of possible approval.  *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4; *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *8 (E.D.Mich. Aug. 2, 2010); *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *4 (E.D.Mich. July 13, 2006) ("The Court finds that the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies").  An analysis of these considerations demonstrates that the proposed Settlement warrants preliminary approval.

1.  **The Settlement Was Reached After Exchange of Substantial Information, Motion Practice, and Arms-Length Negotiations Between Experienced Counsel With the Assistance of a Respected Mediator.**

The Settlement was reached only after mediation and extensive negotiations – many with the assistance of a respected and experienced mediator – over the course of several months.  *Bert v. AK Steel Corp.*, WL 4693747, at *2 (S.D.Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were

17

conducted at arm's length and without collusion between the parties."); *see also Hillson v. Kelly Services, Inc.*, 2017 WL 279814 at *6 (E.D.Mich. January 23, 2017) (finding that the use of a neutral, experienced mediator is an indication that the parties' agreement is non-collusive).

Class Counsels' extensive experience with vigorous and successful litigation of complex class action litigation provides strong indicia that Class Members were well-represented throughout the litigation and negotiation of the proposed Settlement, weighing in favor of approval.  Lead defense counsel, Wheeler Trigg & O'Donnell, is a prominent international firm with a strong reputation in the field of complex class action litigation and proved to be a formidable adversary in this litigation.  Class Counsel have all successfully prosecuted and settled numerous consumer class actions and other complex litigation throughout the country and were well-qualified to negotiate the Settlement here.  (Irby Decl., ¶¶16-19 & Exhibit A thereto.) *See, e.g., Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 3 (2d Cir. 2012) (finding that "the district court did not abuse its discretion when it presumed the proposed settlement was fair" where "competent counsel appeared on both sides" and "settlement was reached only after contentious negotiations"); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D.Ohio 2001) ("Moreover, when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair."); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 244 (S.D. Ohio 1991) (approving settlement reached "[a]fter almost six months of concerted negotiations"); *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D.Ill. 2001) (listing cases and noting that arms-length negotiations conducted by competent counsel leads to a presumption of fairness of a settlement).  Moreover, attorneys' fees and service payments for the Class Representatives were not discussed or negotiated until all other material settlement terms had been agreed upon, eliminating the possibility of a trade-off

between compensation for the Settlement Class and compensation for Class Counsel or the Named Plaintiffs.  (Irby Decl., ¶11.)

Additionally, the parties had more than adequate information before them to evaluate their relative positions and to make knowledgeable decisions about Settlement throughout the negotiations.  (*Id.*, ¶12.)  Prior to filing their clients' respective actions, Class Counsel thoroughly investigated the facts and claims, including consultation with an appliance expert, review of publicly available information, interviews with several similarly situated dishwasher owners, and legal research regarding state law claims, remedies, and class certification.  (*Id.*, ¶4.) The parties fully briefed dispositive motions testing Plaintiffs' claims.  Additionally, to facilitate exploration of settlement and in anticipation of mediation, Whirlpool produced, and counsel reviewed, materials and information surrounding the alleged defect, Whirlpool's remedial and customer service efforts, the nature of the problem, and the scope of the potential class, among other items.  (*Id.*, ¶6.)  Whirlpool continued to provide information and materials as settlement negotiations progressed.  (*Id.*, ¶9.)  And, before a final Settlement Agreement was executed, Whirlpool produced over 1,000 pages of confirmatory discovery on relevant issues to further confirm the fairness and factual predicates of the nationwide settlement.  (*Id.*, ¶12.)  "The absence of formal discovery in no way undermines the integrity of the settlement given the extensive investigation that has occurred as a result of proceedings thus far which demonstrates that counsel have a full understanding of the strengths and weaknesses of their case."  *Griffin v. Flagstar Bancorp Inc.*, 2013 WL 6511860 at *4 (E.D.Mich. Dec. 12, 2013); *see also Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties."); *see also N.Y. State Teacher's Ret. Sys.*

*v. Jen. Motors Co.,* 315 F.R.D. 226, 236 (E.D.Mich. 2016) ("The relevant inquiry is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement."); *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161 at *6 ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation.")

> **2.    The Settlement Provides Substantial Relief Which Outweighs the Mere Possibility of Future Relief Through Protracted and Costly Litigation, Particularly Considering Plaintiffs' Likelihood of Success on the Merits.**

The Settlement is reasonable in light of what Plaintiffs could recover if they prevailed at trial and when measured against the likelihood of success.  This is particularly true as a preliminary matter because "the Court, at this juncture, is not obligated to, nor could it reasonably, undertake a full and complete fairness review." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 350.  Rather, "the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation." *Id.*

Here, the Settlement provides substantial relief for all 799,000 Class Members that is specific to their damages, and constitutes significant recovery for the Settlement Class.  Again, the alleged defect at issue surrounds the plastic wheel axel in the plastic rack adjuster assembly used in combination with the V-Rail design.[8]  This alleged defect in the upper rack adjusters can

---

[8] Notably, Whirlpool has taken the position that the alleged defect at issue is not covered under its express warranty, and this Court agreed.  (*Burch* ECF Nos. 16 & 22.)  Arguably, the proposed Settlement provides warranty relief to Class Members that they otherwise would not be entitled to receive.

be fixed or repaired with the replacement of the plastic upper rack adjuster with a stainless steel rack adjuster assembly.  The proposed Settlement offers full retroactive relief to those consumers who paid out of pocket for repairs to their upper rack adjuster, as well as comprehensive and meaningful prospective relief to those who received free repairs or have had no repairs.

Importantly, these benefits compare favorably in light of the substantial litigation risks the settlement class faces.  Indeed, "[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."  *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (citation omitted).

While the Settlement provides meaningful benefits to all class members nationwide, certifying a nationwide litigation class, or even a multi-state class, would have been very challenging.  The Settlement class faces risks beyond just class certification.  Whirlpool's summary judgment motion and Motion to Dismiss remain pending in this Court and seek to eliminate claims of the proposed class.  Notably, Whirlpool's partial Motion to Dismiss in the *Burch* action was granted in full.

Even if Plaintiffs overcome dispositive motions, obtain and maintain class certification, and prevail at trial, it is reasonable to assume that Whirlpool would seek one or more appeals. Undoubtedly, continued litigation would involve considerable time and expense, particularly in a product defect class case of this nature.  The value of any judgment would be discounted by the delay the class members would suffer in actually obtaining a judgment.  By contrast, the proposed Settlement provides certain, timely, and substantial relief.  It also avoids a huge consumption of resources of the parties and the Court.  Evaluated against the delays, costs, and

21

uncertainties associated with trial and appeals, the Settlement provides immediate, substantial economic benefits and falls within the range of reasonableness.

In considering the Class's likely success on the merits, the Court's task is not to "decide whether one side is right or even whether one side has the better of these arguments," because that would "defeat the purpose of a settlement in order to approve a settlement." *UAW*, 497 F.3d at 632. Rather, it is enough if the evidence shows that: (1) the parties are locked in a real dispute regarding whether the Class Dishwashers are defective; and (2) the merits of the Class's case are not so overwhelming that continued litigation is a vastly better option than settlement. In this case, the parties submit the Settlement is a very good option for Plaintiffs.

### 3. The Parties and Their Counsel Believe the Settlement Is Fair and Reasonable.

The opinions of Class Counsel (and Whirlpool) and of the Class Representatives favor approval of the proposed Settlement. Other proposed Class Members will have the opportunity to weigh in on the Settlement at the Fairness Hearing if the Court grants preliminary approval. (Settlement Agreement, VII.) Class Counsel strongly believe that the Settlement provides significant value to the Settlement Class, especially given that there is no guarantee that the class would not walk away empty handed. The judgment of the Named Plaintiffs and Class Counsel is entitled to deference. *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F.Supp. 2d 521, 532-33 (E.D.Ky. 2010) ("[I]n deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011); *see also, e.g., Int'l Union, United Auto., Aerospace, & Agr. Impl. Workers of Am. V. Ford Motor Co.*, 2008 WL

4104329, *26 (E.D.Mich. Aug. 29, 2008) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.").

### 4.   Preliminary Approval Is Appropriate Under the Recent Amendments to Rule 23.

Rule 23 was amended on December 1, 2018.[9]  These amendments, among other things, codify best practices for preliminary approval.   In particular, they require Plaintiffs to demonstrate that the court will "likely be able to (i) approve the proposal [as fair, reasonable, and adequate] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the propose[ed settlement]."  Fed.R.Civ.P. 23(e)(1)(B) (2018 amendment).  The parties respectfully submit that the Settlement satisfies these standards.

The recent amendments to Rule 23(e)(2) effectively codify a modified version of the Sixth Circuit's *UAW* factors for ***final*** settlement approval and require that the parties show for preliminary approval that the court will "likely" be able to grant final approval to the settlement given those factors.  As amended, Rule 23(e)(2) states that the court may approve a settlement as "fair, reasonable, and adequate" based on two (2) procedural factors and five (5) substantive factors.

The two (2) procedural factors – that the class representatives and counsel adequately represent the class and that the settlement was negotiated at arm's length, Fed.R.Civ.P. 23(3)(2)(A)-(B) (2018 amendment) – largely parallel the first *UAW* factor (fair and honest negotiation) and are satisfied for the reasons the Settlement satisfied that *UAW* factor.  Class Counsel are highly experienced in complex consumer class-action litigation and negotiated this

---

[9] The Supreme Court has ordered that these amendments shall govern civil proceedings commenced thereafter "and, insofar as just and practicable, all proceedings then pending."  Order of the U.S. Supreme Court Amending the Fed.R.Civ.P. (Apr. 25, 2018), https://www.supremecourt.gov/orders/frcv18_5924.pdf.

settlement at arm's length with the help of a neutral mediator after vigorously pursuing the Class's interests in litigation and mediation.  (*See also* Section IV(B)(4) below.)  The Class Representatives have no conflicts of interest with the remainder of the Class and share the Class's interests of maximizing their recovery for the same rack adjuster defect.

The proposed Settlement also satisfies each of the relevant substantive factors, which focus on the adequacy of relief to the class.[10]  In particular, the Court must consider:

> •    "[T]he costs, risks, and delay of trial and appeal." Fed.R.Civ.P. 23(e)(2)(C)(i) (2018 amendment).   This parallels the second and fourth *UAW* factors (the expense and duration of the litigation and the likelihood of success on the merits).   It is satisfied for the same reasons Plaintiffs satisfy the *UAW* factors, discussed above.

> •     The method of processing claims and distributing relief to the class.   *See* Fed.R.Civ.P. 23(e)(2)(C)(ii) (2018 amendment). Here, the Settlement utilizes a comprehensive, state-of-the-art notice program and a straightforward claims process administered by an experienced and nationally respected claims administration firm, as discussed above.   The notice and claims administration protocol are designed to maximize participation and provide comprehensive relief tailored to the class member's circumstances.

> •     The terms of the Settlement regarding attorneys' fees.  *See* Fed.R.Civ.P. 23(e)(2)(C)(iii) (2018 amendment).   The proposed terms are fair and, importantly, do not detract from the adequacy of the Class relief.   Such fees were negotiated as an independent term of the Settlement and not deducted from the relief secured for the Class.   They will also be subject to objections at the fairness hearing and approval under Rule 23(h)(1) and 54(d)(2).   Further, approval of the Settlement is not contingent on approval of attorneys' fees.

> •     Whether Class members are treated equitably relative to each other.  *See* Fed.R.Civ.P. 23(e)(2)(D) (2018 amendment).  The

---

[10] A fifth substantive factor, which addresses the presence of any agreements between the parties separate from the Settlement Agreement, is not relevant because there are no such agreements in this case.  *See* Fed.R.Civ.P. 23(e)(2)(C)(iv) (2018 amendment).

settlement treats class members equitably relative to each other, as they are differentiated only by appropriate remedies/relief based on their incurred damages/injury.  *See In re Whirlpool*, 678 F.3d at 421.

**B.    The Proposed Settlement Class Should Be Certified.**

Before a court may certify a class for settlement purposes, it must ensure that the proposed class satisfies each requirement of Rule 23(a) and that it falls within one of the three categories permitted by Rule 23(b). *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 396-97 (6th Cir. 1998) (*en banc*). Here, in addition to satisfying each of the prerequisites of Rule 23(a), Plaintiffs seek certification under Rule 23(b)(3), which requires that questions of law or fact common to class members predominate over any questions affecting individual members. While a class certified for settlement purposes must satisfy the requirements for class certification pursuant to Rule 23, the court "need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Class certification is warranted in this action because the Settlement Class satisfies the requirements of both Rules 23(a) and 23(b).

**1.    Numerosity**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." *See Daffin v. Ford Motor Co*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement" (internal quotation marks omitted)). *See In re Whirlpool*, 722 F.3d at 854 (same). The Rule "requires examination of the specific facts of each case and imposes no absolute limitations. When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone." *Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 338 (M.D. Tenn. 2008) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)) (internal quotations and citations omitted)). Here, the number of Settlement Class Members is estimated to include approximately 799,000 purchasers of the dishwashers at

25

issue. (Irby Decl., ¶5.)  Numerosity is plainly satisfied.

### 2.    Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." This said, "there need only be one question common to the class, so long as the resolution of that question will advance the litigation." *Philips v. Philip Morris Cos. Inc*., 298 F.R.D. 355, 363 (N.D. Ohio 2014) (internal quotation marks omitted); *see also Burch* ECF No. 13, PAGE ID. 116 (pleading non-exclusive list of common questions of law and fact applicable to the Settlement Class). The commonality requirement is readily met here. Plaintiffs allege that the Whirlpool brand dishwasher models at issue share the same defect (plastic axel on upper rack adjuster in V-Rail models) and were purchased by those who necessarily comprise the Settlement Class. *See Daffin*, 458 F.3d at 552 (explaining that the issue of whether common feature was defective satisfied commonality requirement); *Bacon v. Honda of Am. Mfg., Inc*., 370 F.3d 565, 570 (6th Cir. 2004) (finding a proposed class satisfies the commonality requirement when "it is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue.").

### 3.    Typicality

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Typicality determines where the nature of the plaintiff's claims, judged from both a factual and legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156-57 (1982). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted); The Sixth Circuit has also described the typicality requirement this way: "as goes the claim of the named plaintiff, so go the claims of the class*." Sprague*, 133 F.3d at 399.

Here, the typicality requirement is met because the Class Representatives suffered the same alleged injury - the defective product - as the other Settlement Class Members. Importantly, "[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976). It consequently makes no difference that the Settlement Class includes residents of states from which there is no class representative. The common-law and consumer-protection claims asserted in this action "are recognized in some form in all jurisdictions and therefore available for all class members . . . Despite possible state-by-state variations in the elements of these claims, they arise from a single course of conduct by [Whirlpool] and a single set of legal theories." *In re Heartland Payment Sys, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012); *see also In re Cardiazem CD Antitrust Litig.*, 218 F.R.D. 508, 519 (E.D. Mich. 2003) (finding class representatives adequate "to prosecute claims under the laws of other states"); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 250-51 (D. Del. 2002) (same).

### 4. Adequacy

Rule 23(a)(4) requires that the Class Representatives "will fairly and adequately protect the interests of the class." This requirement has two components. First, "[t]he representative must have common interests with unnamed members of the class." *Senter*, 532 F.2d at 524-25. That requirement is satisfied here because the Class Representatives purchased the same alleged defective dishwasher as the absent Class Members did and suffered the same injuries. Second, "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.*

Class Counsel have extensive experience in prosecuting complex consumer class actions such as this one. (Irby Decl., ¶¶16-19; *see also* Class Counsel firm resumes attached as Exhibit A to Irby Decl.)  The law firm resumes provide detail on the respective firm's vast experience serving in leadership roles in complex class action litigation throughout the United States. This

27

requirement tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977). Both requirements are met in this case.

### 5.    Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." To satisfy the predominance requirement, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (internal quotation marks omitted). "The fact that a defense may arise or may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id.* (internal quotation marks omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) ("Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that every element of her claim is susceptible to class-wide proof." (internal quotation marks omitted)).

As the Sixth Circuit has concluded in another appliance defect class action, common questions – such as "the existence of a design defect" [. . .] -- predominate over individual issues. *In re Whirlpool*, 722 F.3d at 859 ("[W]e uphold the district court's determination that the liability questions common to the Ohio class – whether the alleged design defects in the [washing machines] proximately caused mold to grow in the machines and whether Whirlpool adequately warned consumers [. . .] – predominate over any individual questions."); *see also Daffin*, 458 F.3d at 554 (finding the predominance requirement satisfied where class members alleged the same product defect); *Sullivan v. DB Ins. Inc.*, 667 F.3d 273, 299-302 (3d Cir. 2011) (*en banc*) (explaining that "as long as a sufficient constellation of common issues binds class

members together, variations in the sources and application of applicable laws will not foreclose class certification.")

6.    **Superiority**

Finally, Rule 23(b)(3) requires a showing that a "class action is superior to other available methods for fair and efficient adjudication of the controversy." Relevant considerations include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *Id.*

This Settlement will provide meaningful relief for Settlement Class members who would likely receive nothing from un-economical individual claims. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."). And because the class is proposed for settlement, manageability concerns presented by variances in state law do not defeat a finding of superiority. *See Sullivan v. DB Invs., Inc*, 667 F.3d 273, 303-04. Potential state law variations are largely "irrelevant to certification of a settlement class." *In re Warfarin*, 391 F.3d at 529.

The four considerations stated above are satisfied. First, Class members have little or no interest in controlling individual actions because virtually identical relief is sought by all and the claims of the members are relatively small. The time and expense associated with such litigation would easily exceed the potential individual recovery. Second, Plaintiffs are not aware of any past or current litigation filed against Whirlpool on behalf of the Class concerning this same controversy. Third, this Court is an appropriate forum because Whirlpool's principal place of business is in this District.  Fourth, rather than create difficulties, maintenance of a class action

will create efficiencies that "resolv[e] this issue 'in one stroke' for all members of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)).

Plaintiffs have met their burden of demonstrating that a class action is the superior method of adjudicating this dispute. The alleged dishwasher damages in this case are relatively small for each potential class member. It is unlikely that many members of the class will bring individual lawsuits. Class litigation plainly superior method of adjudicating Plaintiffs' claims. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 186 (W.D. Mich. 2011).

### C.    The Court Should Approve the Proposed Form and Method of Class Notice.

Before granting final approval to a class action settlement, the Court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed.R.Civ.P. 23(e)(1)(B). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union*, 497 F.3d at 629-30 (quoting *Mullane v. Cent. Hanover Bank 7 Trust Co.*, 339 U.S. 306, 314 (1950)).

The proposed notice program satisfies due process and Rule 23. As discussed above, the notice plan provides for direct, individual notice via either email or mail based on a search of Whirlpool's databases for addresses. *See* Fed.R.Civ.P. 23(c)(2) (explaining that individual notice should be provided to all members who can be identified through reasonable effort). The databases are particularly likely to include Class Members who were affected by the alleged defect at issue. The notice plan also includes publication, internet, and social media notice.

The Settlement Notice itself also satisfies due process and Rule 23. (Settlement Agreement, Exhibit 3; Irby Decl., Exhibits B & C.); *see also In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d at 1086 (approving notice that "described the terms of the settlement, the reasons for [class representatives' decision to settle], the legal effect of the settlement and the rights of the [class members] to voice their objections"). The Notice includes all information required by Fed.R.Civ.P. 23(c)(2)(B). Specifically, it provides detailed information concerning: (a) the

30

rights of Class Members, including the how and by when to lodge objections or opt-out; (b) the nature of the litigation and the claims at issue; (c) the proposed Settlement; (d) the available recoveries to Settlement Class members; (e) the process for filing a claim; (f) the fees and expenses to be sought by Class Counsel; and (g) the date of the Fairness Hearing.  It further advises Class Members on how to obtain additional information about the Settlement, including the FAQ, from the Settlement Administrator's website.

**V.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court:

1. preliminarily approve the Settlement Agreement;

2. certify the Rule 23(b)(3) Settlement Class;

3. appoint Class Counsel as Settlement Class Counsel;

4. appoint Epiq as the Settlement Administrator;

5. order notice of the Settlement to be provided to members of the Settlement Class;

6. enter the proposed schedule or another schedule, for notice, opt-out deadlines, objection deadlines, and dates for final approval briefing and hearing.

Respectfully submitted this 8th day of May, 2019.

/s/ R. Brent Irby_____
R. Brent Irby
McCallum, Hoaglund & Irby, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama  35216
Telephone:     205.824.7767
Facsimile:      205.824.7768
Email:  birby@mhcilaw.com

Edward A. Wallace
Wexler Wallace LLP
55 West Monroe Street
Suite 3300
Chicago, Illinois 60603
Telephone:     312.346.2222
Facsimile:      312.346.0022
Email:           eaw@wexlerwallace.com

## CERTIFICATE OF SERVICE

This is to certify that on May 8, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which automatically notifies counsel as follows:

Galen D. Bellamy
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647
Telephone: 303.244.1800
Email: bellamy@wtotrial.com
*Attorneys for Defendant, Whirlpool Corporation*

N. Scott Carpenter
Rebecca Bell-Stanton
Carpenter & Schumacher, P.C.
2701 Dallas Parkway
Suite 570
Plano, Texas  75093
Telephone:  972.403.1133
Facsimile:  972.403.0311
Email:  scarpenter@cstriallaw.com
           rstanton@cstriallaw.com

/s/ R. Brent Irby_____
COUNSEL